274 P.3d 1220

**CECILIA A., Appellant,**

v.

**ARIZONA DEPARTMENT OF
ECONOMIC SECURITY,
A.G., Appellees.**

**No. 1 CA–JV 11–0167.**

Court of Appeals of Arizona,
Division 1, Department A.

April 12, 2012.

The Stavris Law Firm, PLLC by Alison Stavris, Scottsdale, Attorney for Appellant.

Thomas C. Horne, Attorney General by Jamie R. Katelman, Assistant Attorney General, Phoenix, Attorneys for Appellee, Arizona Department of Economic Security.

Burguan Clarke Law Office, PLLC by Jessica J. Burguan, Phoenix, Attorneys for Appellee, A.G.

## OPINION

TIMMER, Judge.

¶1 We are asked to decide whether the juvenile court violates a mentally impaired parent's due process rights when it fails to suspend a parental severance hearing until the parent can regain the ability to meaningfully participate in the proceedings and assist counsel. In deciding this issue, we must also determine a guardian ad litem's authority to act for a parent in severance proceedings. For the reasons that follow, we affirm.

## BACKGROUND

¶2 Three months after twenty-month-old A.G. was put in a voluntary foster-care placement, the Arizona Department of Economic Security ("ADES") petitioned for a dependency as to mother Cecilia A. ("Mother"), alleging neglect and continued inability to parent due to mental health issues.[1] At the first hearing, at the request of Mother's counsel and pursuant to Arizona Revised Statutes ("A.R.S.") section 8–535(F) (West 2012),[2] the court appointed a guardian ad litem ("GAL") to protect Mother's interests throughout the juvenile court proceedings. The court also appointed a GAL for A.G. The court later found A.G. dependent as to Mother on the grounds alleged.

¶3 Almost two years later, A.G.'s GAL moved for termination of Mother's parental rights pursuant to A.R.S. § 8–533(B)(8)(c), alleging A.G. had been in an out-of-home placement for more than fifteen months, Mother had been unable to remedy the circumstances causing the placement, and there was a substantial likelihood she would not be capable of parenting A.G. in the near future. As the date of the contested severance hear-

---

1. The petition also sought a dependency as to A.G.'s father, and the juvenile court later terminated his parental rights. He is not a party to this appeal.

2. Section 8–535(F), A.R.S., provides: "On the motion of any party or on its own motion, the court shall appoint a guardian ad litem if it determines that there are reasonable grounds to believe that a party to the proceeding is mentally incompetent or is otherwise in need of a guardian ad litem."

Absent material revision after the date of the events at issue, we cite a statute's current version.

ing approached, Mother's GAL informed the court that Mother was unable to meaningfully assist counsel at the hearing, and it was not in her best interest to either hear testimony related to the severance or testify about the matter. Thereafter, with agreement by Mother's GAL, A.G.'s GAL, and the attorney for ADES, and with Mother's counsel taking no position, the court presided over a severance hearing in which the parties stipulated to exhibits and only the case manager testified; the court excused Mother from the courtroom. Mother's counsel did not cross-examine the case manager. On the basis of this evidence, the court concluded severance was warranted under A.R.S. § 8-533(B)(8)(c) and would be in A.G.'s best interests.

¶ 4 Mother's GAL filed a timely notice of appeal stating that Mother "may wish to appeal" the severance order, but relating Mother was unable to assist or direct counsel about whether she wished to appeal the termination. ADES moved to dismiss the appeal for failure to include an avowal by counsel as required by Arizona Rule of Procedure for the Juvenile Court ("Rule") 104(B), and this court suspended the appeal and directed the juvenile court to determine the sufficiency of the notice of appeal. The juvenile court conducted a hearing on the issue and, recognizing Mother's unusually limited understanding of the proceedings, denied ADES' motion to strike the notice of appeal and authorized Mother's GAL to file the appeal nunc pro tunc.

## DISCUSSION

¶ 5 Mother does not challenge the court's finding that grounds for severance exist under A.R.S. § 8-533(B)(8)(c) or that severance is in A.G.'s best interests. Rather, she argues the juvenile court violated her right to due process by proceeding with the severance hearing despite recognizing she neither understood the nature of the proceedings nor could assist her counsel in opposing the severance.

### I. Jurisdiction

¶ 6 Before addressing the merits of the appeal, we consider our jurisdiction to do so. In its answering brief, ADES renews its request to dismiss the appeal, arguing the juvenile court acted in contravention to Rule 104(B) by retroactively authorizing Mother's GAL to file the notice of appeal. Mother did not file a reply brief, so she has taken no position on this issue. Nevertheless, in light of Mother's opposition to the initial motion to dismiss and the rights at stake, we do not take her silence as a confession of error. *See Pinal County, Juvenile Action No. S–389*, 151 Ariz. 564, 565, 729 P.2d 918, 919 (App. 1986) (noting appellate court has discretion to treat lack of a response as a confession of error).

¶ 7 Rule 104(B) provides in relevant part as follows:

... When the appellant is represented by counsel, the notice of appeal or cross-appeal shall contain the following statement: "By signing and filing this notice of appeal, undersigned counsel avows that [he/she] communicated with the client after entry of the judgment being appealed, discussed the merits of the appeal and obtained authorization from the client to file this notice of appeal." If counsel for a party files a notice of appeal or cross-appeal that does not contain the required statement, the clerk of the superior court shall forthwith refer the notice of appeal or cross-appeal to the judge assigned to the case in the juvenile court. Upon receiving the referral, the assigned judge shall promptly issue an order striking the notice of appeal or cross-appeal and directing the clerk of the superior court not to process it under rules 104 and 105 of these Rules.

ADES first argues that under the plain meaning of this rule, because Mother was represented by counsel, the notice of appeal was defective as it did not contain the required avowal. But, as ADES acknowledges, Mother's attorney did not file the notice of appeal; Mother's GAL filed it. Consequently, just as Rule 104(B) is not triggered when a party files a notice on his or her own behalf, Rule 104(B) is not triggered by a GAL's filing. We reject ADES' contention that Rule 104(B) requires an avowal of counsel whenever the party is represented as the Rule clearly contemplates that an avowal is

required when *counsel* files the notice. *See* Rule 104(B) ("'By *signing and filing* this notice of appeal, *undersigned counsel* avows ....'") (emphasis added).

¶ 8 ADES next argues Mother's GAL lacked authority to file a notice of appeal on her behalf, making the notice ineffective. It contends that only a guardian appointed in a probate matter for a person adjudicated incapacitated by clear and convincing evidence can decide on the parent's behalf to file a notice of appeal.[3] *See* A.R.S. § 14–5304(B) (authorizing appointment of guardian to make incapacitated person's decisions). Because Mother's GAL was not her guardian, and the court had not adjudicated Mother incapacitated, ADES asserts the GAL lacked authority to file the notice of appeal.

¶ 9 The GAL's role is "to protect the interest of ... an incompetent in a particular case before the court." A.R.S. § 8–531(7). Although ADES does not try to define the limits of this role, it contends a GAL lacks the power to make decisions for the parent. ADES relies on *Maricopa County Juvenile Action No. JD–6982*, 186 Ariz. 354, 359, 922 P.2d 319, 324 (App.1996), in which this court concluded that, absent a judicial finding the parent is actually incompetent, and to ensure due process before a parent's decision-making right is infringed, which the court presumed attached, "a GAL's role [of protecting the parent's interests] must be limited to investigating the best interests of the parent and communicating those interests to the court." *See also* Rule 40(C) (authorizing appointment of GAL to "conduct an investigation and report to the court" regarding parent's competency and need for protection). The court then held that the GAL's determinations of those best interests cannot trump the express wishes of the parent. *No. JD–6982*, 186 Ariz. at 359 & n. 5, 922 P.2d at 324 & n. 5. As in *No. JD–6982*, the court in this case did not take evidence regarding Mother's competency or expressly find her incapacitated or incompetent. Thus, we agree

with ADES that the GAL's appointment did not authorize her to make Mother's decision for her whether to appeal by filing the notice of appeal.

¶ 10 Our analysis does not end there, however. Rule 40(c) also provides that "[t]he court shall conduct hearings and enter orders as determined to be necessary to protect the interests of the parent...." Upon direction by this court, the juvenile court conducted a hearing regarding various attempts to discern Mother's wishes regarding an appeal. Thereafter, the court exercised its Rule 40(c) power to authorize the GAL nunc pro tunc to file the notice of appeal. We disagree with ADES that the court lacked a meritorious reason for authorizing the GAL to file the notice of appeal. The court related its observations that because Mother seemed generally confused about the proceedings, as evidenced by her statement to the court that her children were in jail with her,[4] she was not in a position to file a notice of appeal. Mother's counsel was unable to file the notice of appeal because she could not make the Rule 104(B) avowal due to her inability to discern Mother's wishes. Thus, had the court not authorized the GAL to file the notice of appeal, Mother's contention that the court erred by conducting the severance hearing while she was unable to meaningfully participate would have escaped appellate review through no fault of Mother. Our system of justice demands more, and the juvenile court properly exercised its authority under Rule 40(C) to ensure review.

## II. Due process violation

¶ 11 Mother argues that, because she "was not competent to stand trial," the court erred by proceeding with the severance hearing rather than staying the proceedings until she could be restored to competency. Mother waived this argument by failing to raise it to the juvenile court, and we therefore review only for fundamental error.[5] *Bradshaw*

---

3. ADES does not argue the GAL lacked authority to file a notice of appeal because Mother was represented by counsel. Consequently, we do not address that issue.

4. While the severance proceedings were pending, Mother attempted to wrench a baby from a mother's arms at a light rail stop, believing the child was hers; Mother was arrested and jailed.

5. ADES also contends Mother waived the argu-

*v. State Farm Mut. Auto. Ins. Co.,* 157 Ariz. 411, 420, 758 P.2d 1313, 1322 (1988).

¶ 12 Mother relies on *Kelly R. v. Ariz. Dep't of Econ. Sec.,* 213 Ariz. 17, 137 P.3d 973 (App.2006), to support her position. The mother in *Kelly R.* argued the juvenile court erred by failing to appoint a GAL for her pursuant to A.R.S. § 8–535(F). *Id.* at 18, ¶ 1, 137 P.3d at 974. In deciding this issue, the court applied the test for determining mental competency in criminal matters to assess the need for appointment of a GAL pursuant to § 8–535(F)—whether the parent is able to "understand the nature and object of the proceedings or assist in his or her defense." *Id.* at 22, ¶¶ 26–28, 137 P.3d at 978. The court noted that this interpretation of § 8–535(F) is consistent with A.R.S. § 13–4501(2), which defines a defendant's competency to stand trial in a criminal case. *Kelly R.,* 213 Ariz. at 22, ¶ 28, 137 P.3d at 978. Mother seizes on this language and contends that because she was mentally incompetent at the time of the severance hearing, the juvenile court should have restored her to competency before conducting the hearing.

¶ 13 We reject Mother's contention for two reasons. First, the court never adjudicated her incompetent. Section 8–535(F) requires appointment of a GAL when reasonable grounds exist to believe a parent "is mentally incompetent or is otherwise in need of a[GAL]." A finding of incompetency is not necessary, and, as noted previously, the court in this case did not conduct a hearing on the issue of competency or make any findings regarding Mother's competency.[6] The court's remarks regarding Mother's obvious confusion are not sufficient to constitute a finding of mental incompetency, as a mental impairment does not necessarily mean a person is incompetent. *Kelly R.,* 213 Ariz. at 21, ¶ 25, 137 P.3d at 977 ("[B]eing 'mentally ill'

and being 'mentally incompetent' are not the same.").

¶ 14 Second, even assuming Mother was mentally incompetent, she is wrong that the rights afforded a criminal defendant adjudicated incompetent must be afforded a mentally incompetent parent in a civil severance matter. *Denise H. v. Ariz. Dep't of Econ. Sec.,* 193 Ariz. 257, 259, ¶ 6, 972 P.2d 241, 243 (App.1998) (concluding a severance proceeding is civil in nature). In a criminal proceeding, a mentally incompetent defendant cannot stand trial until restored to competency. A.R.S. §§ 13–4502, –4514(D). In contrast, Title 8, A.R.S., which governs termination of parental rights, does not require that a mentally incompetent parent be restored to competency before the court proceeds with a severance hearing. Indeed, the legislature evidenced an intention to proceed with a severance proceeding even when a parent is mentally incompetent by providing as a ground for severance that a parent is unable to discharge parental responsibilities because of a mental illness or mental deficiency that will continue for a prolonged, indefinite period. A.R.S. § 8–533(B)(3). If a parent is also mentally incompetent,[7] § 8–533(B)(3) would never apply if the court was required to restore the parent to competency before severing the parental rights.

¶ 15 Mother nevertheless contends, without citation to any authority other than *Kelly R.* and criminal statutory provisions, that due process requires the juvenile court to refrain from conducting a severance hearing until the parent is restored to competency. We disagree.

¶ 16 The juvenile court cannot terminate a parent's fundamental liberty interest in the care, custody, and management of a child without affording the parent due process, which requires fundamentally fair pro-

---

ment by failing to adequately cite pertinent authority or the record in her opening brief on appeal. *See* ARCAP 13(a)(6). We find Mother's brief adequate for us to decide her appeal.

6. Prior to the hearing, and at the request of the Mother's GAL, the court appointed a probate GAL to investigate Mother's need for a guardian, but the record does not reflect the results of any investigation.

7. Although the existence of a mental illness or mental impairment does not establish that a person is mentally incompetent, *Kelly R.,* 213 Ariz. at 21, ¶ 25, 137 P.3d at 977, we take judicial notice that a mentally ill or mentally impaired person can be mentally incompetent.

cedures, including notice and an opportunity to be heard. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005); *Maricopa County Juvenile Action No. JS–501904*, 180 Ariz. 348, 355, 884 P.2d 234, 241 (App.1994). In deciding the contours of what is constitutionally required, the court must balance the parent's interest against the child's interest in having the permanency and stability of a "normal family home." *Kent K.*, 210 Ariz. at 286, ¶ 34, 110 P.3d at 1020.

¶ 17 Although Arizona appellate courts have not addressed whether the juvenile court must stay a severance hearing until an incompetent parent is restored to competency, we are guided by decisions issued outside the state. In *In re T.E.B.*, 24 P.3d 900 (Okla.Civ.App.2001), the Oklahoma Court of Appeals rejected a mother's argument that the district court erred by holding a severance proceeding while she was incompetent. The court reasoned that while requiring restoration to competency before standing trial in the criminal context protects and benefits the accused's liberty interest without interfering with others' interests, affording the same right to incompetent parents in severance proceedings would inject indefinite uncertainty into a child's life, which would be detrimental to that child's best interest. *Id.* at 903, ¶ 9. The court further noted that the process of appointing a GAL for a parent, which was done in that case, adequately assured the mother of her due process right to notice and an opportunity to be heard. *Id.* at 903–04, ¶ 10. Other courts have reached the same conclusions as the court in *In re T.E.B.*,[8] and we are not aware of contrary authority.

▮ ¶ 18 We are persuaded by the reasoning in *In re T.E.B.* and like cases that due process does not require the juvenile court to suspend a severance hearing until a mentally incompetent parent can be restored to competency, if ever. A severance proceeding adjudicates substantial rights of both a parent and child; a parent's rights to attend and meaningfully participate in a severance hear-

ing cannot be afforded at the expense of a child's right to a stable parenting situation. Thus, we decide that these sometimes-competing interests are properly balanced by allowing the severance hearing to proceed while a parent is mentally incompetent but protecting that parent's interests by appointing a GAL and counsel to represent the parent's interests during the proceedings. That procedure occurred in this case. We therefore hold that the juvenile court did not violate Mother's due process rights by proceeding with the severance hearing, even assuming she was mentally incompetent.

### CONCLUSION

¶ 19 For the foregoing reasons, we decide the juvenile court did not violate Mother's due process rights by proceeding with the severance hearing while she was unable to meaningfully participate in the hearing and assist counsel. Because Mother's GAL and counsel participated in the hearing, Mother's rights were adequately protected. We affirm.

CONCURRING: MAURICE PORTLEY, Presiding Judge and ANDREW W. GOULD, Judge.

---

**8.** *See State in the Interest of S.A.D.*, 481 So.2d 191, 193 (La.Ct.App.1985) (holding mother's due process rights not violated by holding severance hearing while she was mentally incompetent and unable to attend as interest of children in stabi-

lizing their home life was greater than mother's interest in appearing, and she was protected by participation of her counsel at hearing); *State in the Interest of A.E. & J.D.*, 448 So.2d 183, 186 (La.Ct.App.1984) (to same effect).